UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOHNNY HAYES,

    Petitioner,

v.

                              Case No. 21-cv-589-pp

UNITED STATES OF AMERICA,

    Respondent.

---

**ORDER SCREENING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1) AND DENYING MOTION TO EXPEDITE (DKT. NO. 3)**

---

On May 10, 2021, the petitioner filed a motion to vacate, set aside or correct his sentence in <u>United States v. Johnny Hayes</u>, Case No. 08-cr-134 (E.D. Wis.). Dkt. No. 1. The motion alleges ineffective assistance of counsel for failing to object to a presentence investigation report that provided an allegedly incorrect criminal history category. <u>Id.</u> at 6-7. On January 24, 2022, the petitioner filed a letter asking the court to expedite its ruling. Dkt. No. 3. This order denies the motion to expedite, screens the §2255 motion, allows the petitioner to proceed and orders the respondent to answer or otherwise respond.

**I.    Background**

    **A.**    <u>Underlying Case</u>

        1.    *Information*

On November 4, 2008, the government filed an information against the petitioner and codefendant Derrick Powe. <u>Hayes</u>, Case No. 08-cr-134, Dkt. No.

1

37. Count One charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) and 2 (alleging that they had robbed Associated Bank). Id. at 1. Count Two charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) and 2 (alleging that they had robbed Associated Bank). Id. at 2. Count Three charged the petitioner with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) (alleging that he had robbed Guardian Credit Union). Id. at 3. Count Four charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) (alleging that they had robbed Citizens Bank). Id. at 4. Count Five charged the petitioner and Powe with knowingly using, carrying and brandishing a firearm during and in relation to the crime of violence charged in Count Four (the Citizens Bank robbery) in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. Id. at 5.

    2. *Plea agreement and change-of-plea hearing*

On October 24, 2008, the petitioner (represented by Attorney Daniel Stiller) signed a plea agreement. Dkt. No. 38 at 15. The agreement was filed on November 4, 2008—the same day that the government filed the information. Id. The agreement stated that the petitioner was pleading guilty to Counts One, Two, Three, Four and Five of the information. Id. at ¶5. It indicated that the petitioner had read and fully understood the charges in the superseding indictment and the "nature and elements of the crimes with which he ha[d] been charged" and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶3. In the agreement, the petitioner

acknowledged, understood and agreed that he was guilty of the offenses charged in Counts One, Two, Three, Four and Five of the information. Id. at ¶6. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. The agreement stated that the petitioner understood and agreed that the maximum term of imprisonment for each of Counts One, Two, Three and Four was twenty-five years in prison, a $250,000 fine and five years of supervised release; the agreement stated that he understood and agreed that the mandatory minimum term of imprisonment for Count Five was seven years consecutive to any other term of imprisonment and that the maximum penalties were life in prison, a $250,000 fine and five years of supervised release. Id. at ¶8. The agreement stated that the petitioner acknowledged, understood and agreed that he had "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶9.

The agreement also laid out the elements of the charges. Id. at ¶¶11-12. It said that the parties understood and agreed that in order to sustain the charge of armed bank robbery as charged in Counts One, Two, Three and Four of the information, the government must prove beyond a reasonable doubt that (1) "[the petitioner] took or aided and counseled the taking, from the person or presence of another money belonging to or in the care, custody, or possession of a bank or credit union located in the Eastern District of Wisconsin," (2) the Federal Deposit Insurance Corporation or the National Credit Union Administration insured the deposits of the banks at the time of the offenses, (3)

3

the petitioner "took or aided and counseled the taking by means of force and violence, or by means of intimidation," and (4) the petitioner assaulted or put another's life in jeopardy by the use of a dangerous weapon while committing the robbery, or aided and counseled the same. Id. at ¶11. The parties confirmed that they understood and agreed that in order to "sustain the charge of brandishing a firearm during and in relation to" the violent crime charged in Count Five, the government must prove beyond a reasonable doubt that (1) the petitioner "committed the crime of aggravated bank robbery in violation of Title 18 U.S.C. §§ 2113(a) and (d)," and (2) the petitioner "knowingly brandished or aided and counseled the brandishing of a firearm during and in relation to that crime." Id. at ¶12.

The agreement confirmed that the petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶15. The petitioner acknowledged and understood that the agreement did not "create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guideline range." Id. at ¶17. The agreement reflected that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶29. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by

4

the court." Id. at ¶30. The agreement provided that if it "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. at ¶47. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶48.

On November 14, 2008, United States District Judge Rudolph Randa held a change-of-plea hearing. Dkt. No. 40. The petitioner appeared in person with Attorney Stiller. Id. The court's minutes reflect that the court placed the petitioner under oath and questioned him. Id. The petitioner waived a reading of the information and the government's offer of proof. Id. The court reviewed the penalties associated with the charges and accepted the petitioner's plea and found him guilty of Counts One, Two, Three, Four and Five of the information. Id.

### 3. *Sentencing hearing*

On February 24, 2009, Judge Randa conducted the sentencing hearing. Dkt. No. 55. The petitioner appeared in person with Attorney Stiller. Id. The court clarified the offense level of the armed bank robberies (correcting an error in the presentence investigation report):

> Defense notes Mr. Hayes's offense level is contrary to the plea agreement at paragraph 36 for Count 1 and at paragraph 45 for

5

> Count 2. Parties agree the defendant brandished a weapon during the bank robbery. The PSR says the defendant used the weapon. §1B1.1 commentary note 1i - "otherwise used" - did not discharge the weapon but did more than brandish it but less than discharge. Therefore the offense level is subject to 5-levels, not 6. OL = 29 as to both so total offense level is 30.
>
> Government notes it did agree to recommend the lower offense level.
>
> Court accepts the "otherwise used" definition. After acceptance the offense level is 30.

Id. at 3. Both parties gave their respective sentencing recommendations; the government recommended thirteen years on the armed robbery counts followed by a consecutive sentence of seven years on the §924(c) count while the petitioner asked for a total sentence of fourteen years and nine months. Id. The court sentenced the petitioner to one hundred fifty-six months in prison on Counts One, Two, Three and Four, concurrent each other. Id. at 1. It sentenced the petitioner to eighty-four months on Count Five, consecutive to the sentences imposed on the other counts. Id. The court imposed five years of supervised release on each count, to run concurrently, and advised the petitioner of his right to appeal. Id. at 1-2.

The court entered judgment on February 24, 2009. Dkt. No. 56 at 1. The court's judgment reflected the sentence: one hundred fifty-six months of prison followed by five years of supervised release on each of Counts One, Two, Three and Four (to run concurrently with each other), and on Count Five, eighty-four months of prison consecutive to the sentences imposed on all other counts followed by five years of supervised release concurrent to all other counts, for a

6

total of two hundred forty months in prison followed by five years of supervised release. Id. at 3-4.

### 4. *Direct appeal*

On March 5, 2009, the petitioner filed a notice of appeal. Dkt. No. 57. On appeal, the petitioner "contest[ed] only the factual validity of a single statement the district court made at sentencing about the robbery's impact on the racial attitudes of some bank employees." Dkt. No. 107 at 4. Eighteen months later, the Seventh Circuit affirmed the district court's judgment. Id. at 6. The court concluded that (1) the petitioner did not show that the district court was factually incorrect, (2) even if the district court was factually incorrect, the petitioner did not show what difference it made, and (3) the district court's "within-guidelines sentence was easily justified by [the petitioner's] repeated bank robberies of more than a half-million dollars." Id.

### 5. *Motion for compassionate release*

On November 3, 2020, the petitioner filed a motion for compassionate release. Dkt. No. 178. The petitioner asserted that his health put him at a high risk for severe illness from COVID-19, and that "his existing sentence was the product of two significant legal errors, both of which increased his prison term." Id. at 1. As he argued in his motion,

> [t]he first robbery occurred on December 21, 2006. Yet the PSR awarded three points for a 1981 conviction where Mr. Hayes was paroled in January 1991 and never revoked. December 21, 2006 is more than 15 years after January 1991—at least 15 years and ten months after. So this 1981 conviction should not have counted for criminal history points. *See* U.S.S.G. §§4A1.1(a), 4A1.2(e)(1) (2008 ed.) (a sentence exceeding 13 months counts only if it "resulted in the defendant being incarcerated" "within fifteen years of the

7

defendant's commencement of the instant offense"). But the PSR counted it, and no one caught this error. Without these three unjustified points, Mr. Hayes's criminal history category would have been III, not IV, and his sentencing guideline range would have been 16 to 20 months lower.

This error affected Mr. Hayes's sentencing. The government asked for a sentence within the guidelines, just five months above the 235-month bottom—a flat 240 months combined. Judge Randa imposed that exact sentence. Without the guideline error, a sentence five months above the bottom would have been 224 months, not 240.

Id. at 4-5 (some citations omitted).

Three months later, the court denied the motion. Dkt. No. 203. Declining to decide whether a motion for compassionate release was the proper vehicle for asserting the sentencing error, this court concluded that even if it was, "the 'corrected' sentence would not likely have been anywhere near the twelve years and nine months [the petitioner] ha[d] served." Id. at 18.

### B. Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)

On May 10, 2021—twelve years after the court entered judgment and ten years and eight months after the Seventh Circuit issued its mandate affirming the judgment—the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Hayes v. United States, Case No. 21-cv-589 (E.D. Wis.), Dkt. No. 1. The motion asserts ineffective assistance of counsel for failing to identify an alleged error in the petitioner's presentence investigation report. Id. at 6-7. The petitioner states that "[t]he Presentence Report writer incorrectly assessed three criminal history points for an old conviction, which fell outside the range for point assessment." Id. at 7. He concludes that Attorney Stiller should have caught this error prior to sentencing. Id. According

8

to the petitioner, "[t]his moved [the petitioner] from Category III to IV, which inflated his sentence for the robberies by 16 to 20 months." Id.

## II. Analysis

### A. Standard

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. Application

The petitioner did not raise the ineffective assistance claim on direct appeal. Normally, the failure to raise a claim on direct appeal prohibits the court from considering that claim in a §2255 motion. Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) ("[a]ny claim that could have been

9

raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted."). There is an exception, however, for claims of ineffective assistance of counsel, which may be brought for the first time in a §2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. James, 635 F.3d 909, 916 (7th Cir. 2011). The petitioner's motion asserts ineffective assistance of counsel, which is cognizable for §2255 relief and not subject to the exhaustion requirement.

The court has concerns regarding timeliness. Generally, the Antiterrorism and Effective Death Penalty Act of 1996 imposes a requirement that a petitioner file a motion for collateral review within one year of his conviction becoming "final." 28 U.S.C. §2255(f)(1). The court entered judgment on February 27, 2009; the petitioner filed this motion on May 10, 2021. But there are exceptions to the limitation period and failure to timely file is an affirmative defense. The court cannot say from the face of the §2255 motion that the petitioner is plainly not entitled to relief. It will allow the petitioner to proceed on his claim and order the respondent to answer or otherwise respond to the §2255 motion.

### III. Petitioner's Motion to Expedite (Dkt. No. 3)

On January 24, 2022, the petitioner filed a letter asking the court to "expedite [his] 2255 motion." Dkt. No. 3. He says that "[t]he institution has enacted the First Step Act, and in order for the case manager, and counselor to compute [his] time with the parts of the act that apply to [him], they need to

10

Case 2:21-cv-00589-PP   Filed 05/26/22   Page 10 of 12   Document 4

know how much time I have left." Id. The petitioner states that by granting his §2255 motion, the court would "help provide a firm end of [his] sentence." Id.

To the extent the petitioner requests the court to screen his §2255 motion, the motion is moot because this order provides that relief. To the extent the petitioner seeks expedited proceedings in this case, the court will deny the motion. The respondent has a right to be heard.

## IV.  Conclusion

The court **DENIES** the petitioner's motion to expedite. Dkt. No. 3.

The court **ORDERS** that within sixty days of the date of this order, the respondent shall answer or otherwise respond to the petition, complying with Rule 5 of the Rules Governing §2255 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has forty-five days after the respondent files the answer to file a brief in support of his petition;

(2) the respondent has forty-five days after the petitioner files his initial brief to file a brief in opposition;

(3) the petitioner has thirty days after the respondent files the opposition brief to file a reply brief, if he chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion:

(1) the respondent must include a brief and other relevant materials in support of the motion;

11

(2) the petitioner may file a brief in opposition to that motion within forty-five days of the date the respondent files the motion;

(3) the respondent has thirty days after the petitioner files his opposition brief to file a reply brief, if the respondent chooses to file such a brief.

The parties must submit their pleadings in time for the court to *receive* them by the stated deadlines.

Dated in Milwaukee, Wisconsin this 26th day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**