UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHNNY HAYES,

                Petitioner,

                                            Case No. 21-cv-589-pp

    v.

UNITED STATES OF AMERICA,

                Respondent.

**ORDER DENYING PETITIONER'S §2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE (DKT. 1), DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On May 10, 2021, the court received from the petitioner a motion under 28 U.S.C. §2255 to vacate, set aside or correct the February 24, 2009 sentence imposed by the late Judge Rudolph T. Randa in <u>United States v. Johnny Hayes</u>, Case No. 08-cr-134 (E.D. Wis.). Dkt. No. 1. The motion alleges ineffective assistance of counsel for sentencing counsel's alleged failure to object to a presentence investigation report that included an allegedly incorrect calculation of the defendant's criminal history category. <u>Id.</u> at 6-7. The respondent opposes the motion, arguing that the petitioner's motion is untimely. Dkt. No. 8. The court will deny the motion, deny a certificate of appealability and dismiss the case.

1

# I. Background

## A. Underlying Case

### 1. *Information*

On November 4, 2008, the government filed an information against the petitioner and codefendant Derrick Powe. <u>Hayes</u>, Case No. 08-cr-134, Dkt. No. 37. Count One charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) and 18 U.S.C. §2 (alleging that on December 21, 2006, they had robbed Associated Bank). <u>Id.</u> at 1. Count Two charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) and 18 U.S.C. §2 (alleging that on April 11, 2007, they had robbed Associated Bank). <u>Id.</u> at 2. Count Three charged the petitioner with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) (alleging that on November 14, 2007, he had robbed Guardian Credit Union). <u>Id.</u> at 3. Count Four charged the petitioner and Powe with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) (alleging that on April 10, 2008, they had robbed Citizens Bank). <u>Id.</u> at 4. Count Five charged the petitioner and Powe with knowingly using, carrying and brandishing a firearm during and in relation to the crime of violence charged in Count Four (the April 10, 2008 Citizens Bank robbery) in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 18 U.S.C. §2. <u>Id.</u> at 5.

### 2. *Plea agreement and change-of-plea hearing*

On October 24, 2008, the petitioner (represented by Attorney Daniel Stiller) signed a plea agreement. <u>Id.</u> at Dkt. No. 38, page 15. The agreement was filed on November 4, 2008—the same day that the government filed the

2

information. Id. In the agreement, the petitioner agreed that he was guilty of Counts One, Two, Three, Four and Five of the information. Id. at ¶5. The agreement indicated that the petitioner had read and fully understood the charges in the superseding indictment and the "nature and elements of the crimes with which he ha[d] been charged" and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶3. In the agreement, the petitioner acknowledged, understood and agreed that he was guilty of the offenses charged in Counts One, Two, Three, Four and Five of the information. Id. at ¶6. He admitted that the facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. The agreement stated that the petitioner understood and agreed that the maximum term of imprisonment for each of Counts One, Two, Three and Four was twenty-five years in prison, a $250,000 fine and five years of supervised release; the agreement stated that he understood and agreed that the mandatory minimum term of imprisonment for Count Five was seven years consecutive to any other term of imprisonment and that the maximum penalties were life in prison, a $250,000 fine and five years of supervised release. Id. at ¶8. The agreement stated that the petitioner acknowledged, understood and agreed that he had "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶9.

The agreement also laid out the elements of the charges. Id. at ¶¶11-12. It stated that the parties understood and agreed that in order to sustain the charge of armed bank robbery as charged in Counts One, Two, Three and Four

of the information, the government must prove beyond a reasonable doubt that (1) "[the petitioner] took or aided and counseled the taking, from the person or presence of another money belonging to or in the care, custody, or possession of a bank or credit union located in the Eastern District of Wisconsin," (2) the Federal Deposit Insurance Corporation or the National Credit Union Administration insured the deposits of the banks at the time of the offenses, (3) the petitioner "took or aided and counseled the taking by means of force and violence, or by means of intimidation," and (4) the petitioner assaulted or put another's life in jeopardy by the use of a dangerous weapon while committing the robbery, or aided and counseled the same. Id. at ¶11. The parties confirmed that they understood and agreed that in order to "sustain the charge of brandishing a firearm during and in relation to" the violent crime charged in Count Five, the government must prove beyond a reasonable doubt that (1) the petitioner "committed the crime of aggravated bank robbery in violation of Title 18 U.S.C. §§ 2113(a) and (d)," and (2) the petitioner "knowingly brandished or aided and counseled the brandishing of a firearm during and in relation to that crime." Id. at ¶12.

The agreement confirmed that the petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶15. The petitioner acknowledged and understood that the agreement did not "create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guideline range." Id. at ¶17.

4

The agreement reflected that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶29. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶30. The agreement provided that if it "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. at ¶47. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶48.

On November 14, 2008, Judge Rudolph Randa conducted a change-of-plea hearing. Hayes, Dkt. No. 40. The petitioner appeared in person with Attorney Stiller. Id. The court's minutes reflect that the court placed the petitioner under oath and questioned him. Id. The petitioner waived reading of the information and the government's offer of proof. Id. The court reviewed the penalties associated with the charges and accepted the petitioner's plea and found him guilty of Counts One, Two, Three, Four and Five of the information. Id.

5

3. *Sentencing*

On February 20, 2009, the petitioner's counsel filed a sentencing

memorandum in which he stated that

> [b]ecause Mr. Hayes participated in the commission of four
> aggressive and lucrative bank robberies, the presentence report
> correctly recommends that Mr. Hayes' final offense level is 31 which,
> combined with his Category IV criminal history, produces an
> advisory guideline sentencing range of 151 to 188 months. Because
> Mr. Hayes stands convicted of violating Title 18, Section 924(c), by
> 'brandishing' a firearm during one of the robberies, an additional
> statutory penalty of seven years is mandated. In other words, Mr.
> Hayes, according to the presentence report, faces a total sentence of
> between just over 19 years and just over 23 years.

Hayes, Case No. 08-cr-134 at Dkt. No. 50 (citing PSR at ¶¶121, 123).

On February 24, 2009, Judge Randa conducted the sentencing hearing.

Id. at Dkt. No. 55. The petitioner appeared in person with Attorney Stiller. Id.

The court clarified the offense level for the armed bank robberies (correcting an

error in the presentence investigation report):

> Defense notes Mr. Hayes's offense level is contrary to the plea
> agreement at paragraph 36 for Count 1 and at paragraph 45 for
> Count 2. Parties agree the defendant brandished a weapon during
> the bank robbery. The PSR says the defendant used the weapon.
> § 1B1.1 commentary note 1i - "otherwise used" - did not discharge
> the weapon but did more than brandish it but less than discharge.
> Therefore the offense level is subject to 5-levels, not 6. OL = 29 as to
> both so total offense level is 30.
>
> Government notes it did agree to recommend the lower offense level.
>
> Court accepts the "otherwise used" definition. After acceptance the
> offense level is 30.

Id. at 3. Judge Randa determined that the total offense level of 30 in criminal

history of IV resulted in an advisory guideline imprisonment range of 135 to

168 months for Counts One, Two, Three and Four. See Court's

6

Findings/Addendum as to Objections to Present Report. <u>Hayes</u>, Case No. 08-cr-134, Dkt. No. 206. Both parties gave their respective sentencing recommendations; the government recommended thirteen years (156 months) on the armed robbery counts and a consecutive sentence of seven years (eighty-four months) on the §924(c) count, for a total of twenty years (240 months); the petitioner recommended a total sentence of fourteen years and nine months (177 months). Dkt. No. 55 at 3. The court sentenced the petitioner to one hundred fifty-six months on Counts One, Two, Three and Four, concurrent to each other; it sentenced the petitioner to eighty-four months on Count Five, consecutive to the sentences imposed on the other counts, for a total sentence of twenty years. <u>Id.</u> The court imposed terms of five years of supervised release on each count, to run concurrently, and advised the petitioner of his right to appeal. <u>Id.</u> at 1-2.

The court entered judgment on February 24, 2009. Dkt. No. 56 at 1. The judgment reflected the sentence: one hundred fifty-six months of prison followed by five years of supervised release on each of Counts One, Two, Three and Four (to run concurrently with each other), and on Count Five, eighty-four months of prison consecutive to the sentences imposed on all other counts followed by five years of supervised release concurrent to all other counts, for a total of two hundred forty months in prison followed by five years of supervised release. <u>Id.</u> at 3-4.

7

### 4. *Direct appeal*

On March 5, 2009, the petitioner filed a notice of appeal. <u>Hayes</u>, Case No. 08-cr-134, Dkt. No. 57. On appeal, the petitioner "contest[ed] only the factual validity of a single statement the district court made at sentencing about the robbery's impact on the racial attitudes of some bank employees." <u>Id.</u>, Dkt. No. 107 at 4. Eighteen months later, the Seventh Circuit affirmed the district court's judgment. <u>Id.</u> at 6. The court concluded that (1) the petitioner did not show that the district court was factually incorrect, (2) even if the district court was factually incorrect, the petitioner did not show what difference it made and (3) the district court's "within-guidelines sentence was easily justified by [the petitioner's] repeated bank robberies of more than a half-million dollars." <u>Id.</u>

### 5. *Motion for compassionate release*

On November 3, 2020, the court received from the petitioner a motion for compassionate release. <u>Hayes</u>, Csae No. 08-cr-134, Dkt. No. 178. The petitioner asserted that his health put him at a high risk for severe illness from COVID-19, and that "his existing sentence was the product of two significant legal errors, both of which increased his prison term." <u>Id.</u> at 1. He argued that

> [t]he first robbery occurred on December 21, 2006. Yet the PSR awarded three points for a 1981 conviction where Mr. Hayes was paroled in January 1991 and never revoked. December 21, 2006 is more than 15 years after January 1991—at least 15 years and ten months after. So this 1981 conviction should not have counted for criminal history points. *See* U.S.S.G. §§4A1.1(a), 4A1.2(e)(1) (2008 ed.) (a sentence exceeding 13 months counts only if it "resulted in the defendant being incarcerated" "within fifteen years of the defendant's commencement of the instant offense"). But the PSR counted it, and no one caught this error. Without these three unjustified points, Mr. Hayes's criminal history category would have

8

been III, not IV, and his sentencing guideline range would have been 16 to 20 months lower.

This error affected Mr. Hayes's sentencing. The government asked for a sentence within the guidelines, just five months above the 235-month bottom—a flat 240 months combined. Judge Randa imposed that exact sentence. Without the guideline error, a sentence five months above the bottom would have been 224 months, not 240.

Id. at 4-5 (some citations omitted).

Three months later, the court denied the motion. Dkt. No. 203. Declining to decide whether a motion for compassionate release was the proper vehicle for asserting the sentencing error, the court concluded that even if it was, "the 'corrected' sentence would not likely have been anywhere near the twelve years and nine months [the petitioner] ha[d] served." Id. at 18.

      B.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)

On May 10, 2021—twelve years after the court entered judgment and ten years and eight months after the Seventh Circuit issued its mandate affirming the judgment—the court received from the petitioner the instant motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Hayes v. United States, Case No. 21-cv-589 (E.D. Wis.), Dkt. No. 1. The motion argues that the petitioner's sentencing counsel—Attorney Stiller—provided ineffective assistance when he failed to identify an alleged error in the petitioner's presentence investigation report. Id. at 6-7. The petitioner states that "[t]he Presentence Report writer incorrectly assessed three criminal history points for an old conviction, which fell outside the range for point assessment." Id. at 7. He concludes that Attorney Stiller should have caught this error prior to

9

sentencing. Id. According to the petitioner, "[t]his moved [the petitioner] from Category III to IV, which inflated his sentence for the robberies by 16 to 20 months." Id.

C.    Response/Request for Dismissal (Dkt. No. 8)[1]

The respondent moves to dismiss the motion arguing that the petitioner's claim is untimely. Dkt. No. 8. The respondent appears to concede that sentencing counsel failed to catch the error in the calculation of the criminal history category, but asserts that the petitioner's claim of ineffective assistance is barred by the applicable statute of limitations. Id. at 2. The respondent argues that the petitioner has identified no circumstances that would justify equitable tolling. Id. at 4. The respondent notes that the petitioner says he was not aware of the criminal history scoring rules until the lawyer who represented him on his compassionate release motion pointed them out, but that ignorance of the law does not constitute an extraordinary circumstance justifying equitable tolling. Id. The respondent argues that the petitioner exercised no due diligence in looking into possible errors by his sentencing counsel. Id. at 5. The respondent emphasizes the extent of the delay here—over a decade since sentencing. Id. at 5.

D.    Reply (Dkt. No. 9), Affidavit (Dkt. No. 10)

The petitioner asserts that he found out about the incorrect criminal history calculation on November 3, 2020, when the lawyer who represented

_____

[1] In its brief in opposition to the §2255 motion, the respondent suggests that its argument "should, perhaps, have been framed as a motion to dismiss and not a 'response.'" Dkt. No. 11 at 2.

him on his compassionate release motion told him about it. Dkt. No. 9 at 3. He points out that the compassionate release motion was filed around February 10, 2021 and that he filed the instant petition on May 10, 2021. Id. at 4. The petitioner argues that relief is appropriate under §2255 when the sentence was imposed in violation of the Constitution or laws of the United States or if it exceeded the statutory maximum. Id. at 5. He argues that the statute of limitations may be tolled, and asserts that tolling is authorized by §2255(f)(4). Id. at 7. The petitioner argues that he relied on his lawyer, who told him there was no error in the presentence report, and he assumed his lawyer had done the required "due diligence." Id. at 9-10. The petitioner says that *he* could not exercise due diligence until he knew about the error. Id. at 10.

In his accompanying affidavit, the petitioner avers that the facts in his reply brief are true. Dkt. No. 10.

E.    Opposition Brief (Dkt. No. 11)

The respondent asserts that in his reply brief, the petitioner raised a new argument—that his lawyer was ineffective in failing to anticipate the Supreme Court's ruling in Dean v. United States, 581 U.S. 62 (2017). Dkt. No. 11 at 2. That case held that nothing in 18 U.S.C. §924(c) (the federal statute that requires courts to impose mandatory minimum sentences for certain types of gun crimes) prohibited a sentencing court from taking into consideration the fact that it was required to impose a mandatory minimum sentence when it exercised its authority under 18 U.S.C. §3553(a) to determine the appropriate sentence. Dean, 581 U.S. at 69. The government argues that the petitioner's

argument as to <u>Dean</u> is poorly developed, arguably waived and without merit. <u>Hayes</u>, 21-cv-589, Dkt. No. 11 at 2.

  F.  <u>Response (Dkt. No. 12)</u>

  The petitioner filed a brief in opposition to the respondent's opposition brief (a reply brief, really). Dkt. No. 12. He accused the government of engaging in "an endless cycle, a mundane loop of repeating the same fruitless alternative of facts." <u>Id.</u> at 2. He asserts that an ineffective assistance of counsel claim can be raised for the first time in a §2255 petition. <u>Id.</u> The petitioner asserts—as he did in earlier pleadings—that the court had "stated the merit of the petitioners 2255 motion should be considered . . . ." <u>Id.</u> at 3. The petitioner asserts that he was *not* raising the <u>Dean</u> issue for the first time—he says he cited the case "to provide a legal framework as to the already existing federal procedural law in sentencing which the district court failed to apply properly and defense counsel for the petitioner failed to recognize and plead to the court at sentencing as is stated in detail—not for the first time or as an afterthought if it is literally the entire basis of the 2255 motion." <u>Id.</u>

## II. **Analysis**

  Section 2255(a) of Title 28 provides that a person serving a sentence imposed by a federal court who is

> [c]laiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

12

"Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014) (quoting Blake v. United States, 723 F.3d 870, 878-79 (7th Cir. 2013)).

A.    The Court's Screening Order

The petitioner is under the impression that this court's May 26, 2022 order screening his petition somehow concluded that his petition was timely filed and that the government could not argue otherwise. That is not true. While the court did state that a petitioner may raise a claim of ineffective assistance of counsel for the first time in a §2255 petition, the court explicitly expressed concerns about the timeliness of the petition. Dkt. No. 4 at 10. The court noted that usually a §2255 petition must be filed within a year of the date the conviction it challenges becomes final; it stated, however, that the petitioner had raised a claim cognizable on collateral attack and so it did not dismiss the petition at the outset. Id. The court did *not* rule that the petition was timely filed; the court left to the respondent the discretion to determine whether to challenge the timeliness of the petition. The respondent has done so, and it is proper for the respondent to raise the timeliness issue.

B.    Timeliness

Section 2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

13

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The petitioner has not identified an impediment created by a governmental action in violation of the Constitution or the laws of the United States that prevented him from filing his motion any sooner, as required by §2255(f)(2).

The petitioner has not identified a right he is asserting that was newly recognized right by the Supreme Court and made retroactive on collateral review, as required by §2255(f)(3).

That leaves §§2255(f)(1) and (4).

1.  *Timeliness under § 2255(f)(1)*

Section 2255(f)(1) requires a petitioner to file his petition within a year of the date upon which the judgment became final. The court entered judgment in the underlying criminal case on February 27, 2009. Hayes, 08-cr-134, Dkt. No. 56. The petitioner filed a direct appeal, which the Seventh Circuit denied on September 17, 2010. Id., Dkt. No. 106. The petitioner did not seek a writ of

14

*certiorari* from the United States Supreme Court, which means his conviction became final when the ninety-day period to file a petition for *certiorari* expired—that is, on December 16, 2010. See Clay v. United States, 537 U.S. 522, 524-25 (2003) (holding that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, §2255's one-year limitation period starts to run when the time for seeking such review expires); Supreme Court Rule 13(1). Under §2255(f)(1), the petitioner had one year from that date—until December 16, 2011—by which to file his §2255 motion. The petitioner filed his §2255 motion on May 10, 2021, nine years and five months later, well after the limitations period had expired.

The petitioner doesn't dispute this. He argues instead that the court should apply the doctrine of equitable tolling to conclude that his motion is timely under §2255(f)(1), or that it should determine that his motion is timely under §2255(f)(4).

2.    *Equitable Tolling*

"Equitable tolling is an extraordinary remedy that is rarely granted." Ademiju v. United States, 999 F.3d 474, 477 (7th Cir. 2021) (quotations omitted). "A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. (quotations omitted). "'Extraordinary circumstances' are present only when an 'external obstacle' beyond the party's control 'stood in [his] way' and caused the delay."

15

<u>Lombardo v. United States</u>, 860 F.3d 547, 552 (7th Cir. 2017) (quoting

<u>Menominee Indian Tribe of Wis. v. United States</u>, 136 S. Ct. 750, 756 (2016)).

The petitioner argues that he pursued his rights diligently because he started pursuing §2255 relief as soon as he learned from his compassionate release lawyer that his sentencing attorney incorrectly had told him there were no errors in the PSR. Dkt. No. 9 at 9-10. The petitioner implies that he had no reason to suspect that his sentencing lawyer had provided him ineffective assistance of counsel before that time, because he did not know the rules for scoring criminal history points under the U.S. Sentencing Guidelines.

The court understands the logic of the petitioner's argument, but even if the court were to conclude that the petitioner diligently pursued his rights, he has not shown that an extraordinary circumstance stood in his way so as to prevent his timely filing. "Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling." <u>Arrieta v. Bataglia</u>, 461 F.3d 861, 867 (7th Cir. 2006) (citing <u>Williams v. Sims</u>, 390 F.3d 958, 960 (7th Cir. 2004)). "Indeed, permitted equitable tolling of a statute of limitation for every procedural or strategic mistake made by a litigant (or his attorney) would render [statutes of limitation] 'of no value at all to persons or institutions sued by people who don't have good, or perhaps any, lawyers.'" <u>Id.</u>

The Seventh Circuit repeatedly has rejected requests for equitable tolling based on a petitioner's assertion that his lawyer made a mistake or miscalculation. In <u>Lombardo</u>, the court held that a mistake by the petitioner's

counsel in identifying the correct filing deadline did not warrant equitable tolling of the deadline for the petitioner's filing of his §2255 motion. 860 F.3d at 552-53. The court explained that "mistakes or miscalculations of that sort by a party's attorney do not satisfy the extraordinary circumstances element for equitable tolling." Id. at 552. The court further explained that because a party is bound by the acts of his attorney, "errors by an attorney acting on his behalf do not constitute external obstacles beyond the party's control." Id. (citations omitted). See also Troconis-Escovar v. United States, 59 F.4th 273, 278 (7th Cir. 2023) (an attorney's "[c]areless mistakes . . . are not reason for courts to exercise their equitable powers to override statutory requirements."); Johnson v. Chandler, 224 F. App'x 515, 520 (7th Cir. 2007) ("[W]e have repeatedly held that mistakes of law and ignorance of proper legal procedures are not sufficiently extraordinary to warrant tolling"); Williams, 390 F.3d at 963 ("even reasonable mistakes of law are not a basis for equitable tolling"); Modrowski v. Mote, 322 F.3d 965, 968 (7th Cir. 2003) (ruling that attorney incapacity does not warrant equitable tolling); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999) (holding that attorney's negligence does not warrant equitable tolling).

The petitioner may not have become aware of his sentencing attorney's alleged criminal history miscalculation until his new attorney informed him of the error at the time the new attorney drafted the motion for compassionate release, and he may well have diligently pursued his rights from that point forward. But the Seventh Circuit has made clear that the sentencing lawyer's error was not the kind of extraordinary circumstance that warrants equitable

17

tolling of the one-year limitation period set by §2255(f)(1). Because the petitioner filed this motion more than one year after his judgment became final and because he has not identified extraordinary circumstances justifying the delay, his motion is untimely under §2255(f)(1). The court turns to the petitioner's alternative argument: that his motion is timely under §2255(f)(4).

      3.    *Timeliness under §2255(f)(4)*

Section 2255(f)(4) requires a petitioner to file his §2255 motion within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The petitioner argues that under §2255(f)(4), the one-year limitation period began to run from the time he became aware of his attorney's alleged failure to notice the criminal history calculation error in the PSR.[2] The respondent argues that §2254(f)(4) is inapplicable because the petitioner waited more than a decade to pursue his claim, defeating any argument that he acted with "due diligence" to discover his claim. Dkt. No. 8 at 5-6.

In <u>Johnson v. United States</u>, 544 U.S. 295, 301 (2005), the petitioner filed a §2255 motion to vacate his enhanced federal sentence following the

_____

[2] The petitioner's response brief confuses equitable tolling with the §2255(f)(4) standard. While the petitioner is correct that the Seventh Circuit has held that §2255(f)(4) effectively is a tolling provision of §2255(f)(1)'s one-year limitation period, <u>Clarke v. United States</u>, 703 F.3d 1098, 1100 (7th Cir. 2013), whether the court should equitably toll the one-year limitation period under §2255(f)(1) is a different question from whether §2254(f)(4) justifies tolling that one-year period. But because the petitioner is representing himself, the court applies a liberal reading of the petitioner's argument and construes his response as asking the court to analyze both equitable tolling and whether §2254(f)(4) tolls the one-year period. <u>See Wyatt v. United States</u>, 574 F.3d 455, 459 (7th Cir. 2009) ("Pro se collateral review filings are construed liberally.").

vacatur of one of its predicate state convictions. Attempting to invoke §2255(f)(4), the petitioner argued that his motion was timely because the order vacating the state judgment was "new evidence" that he couldn't have discovered in the exercise of due diligence. Id. The Supreme Court held that although the state-court vacatur constituted a "fact" for purposes of §2255(f)(4), the petitioner could not rely on the provision because he failed to show due diligence in seeking the state-court order. Id. at 302. In discussing how the court should determine whether a petitioner acted with due diligence, the Court explained:

> The answer is that diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence. The important thing is to identify a particular time when the course of the later federal prosecution clearly shows that diligence is in order. That might be the date the federal indictment is disclosed, the date of judgment, or the date of finality after direct appeal. Picking the first date would require the quickest response and serve finality best, but it would produce some collateral litigation that federal acquittals would prove to have been needless, and it shares the same disconnection from the existence of a § 2255 claim as the Government's view of the relevant "facts," see supra, at 1578–1579. If we picked the third date, collateral litigation would be minimized, but finality would come late. This shapes up as a case for choosing the bowl of porridge between the one too hot and the one too cold, and settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns. After the entry of judgment, the subject of the § 2255 claim has come into being, the significance of inaction is clear, and very little litigation would be wasted, since most challenged federal convictions are in fact sustained.

Id. at 308-09. Notably, the Court rejected the dissent's view that due diligence would be satisfied by prompt discovery of the existence of the order vacating the state conviction, explaining that allowing a petitioner to wait years before

attempting to discover a relevant fact would read out the due diligence requirement. The Court gave the following example:

> When a petitioner bases his § 2255 claim on the result of a DNA test, it is the result of the test that is the "fac[t] supporting the claim" in the § 2255 motion, and the 1–year limitation period therefore begins to run from the date the test result is "discovered." Yet unless it is to be read out of the statute, the due diligence requirement would say that the test result only triggers a new 1–year period if the petitioner began the testing process with reasonable promptness once the DNA sample and testing technology were available. Under the dissent's view, however, the petitioner could wait untold years (perhaps until the death of a key prosecution witness) before calling for the DNA test, yet once he "discovered" the result of that test, he would get the benefit of a rejuvenated 1–year period regardless of his lengthy delay. Such a result simply cannot be squared with the statute's plain text and purpose.

Id. at 310. The Court reasoned that at the time of his conviction, the petitioner in Johnson knew his conviction subjected him to the career offender enhancement, yet he waited more than three years after the entry of judgment in the federal case to attack the predicate state offense. Id. at 311. The Court concluded that because "there was every reason to believe that prompt action would have produced a state vacatur order well over a year before he filed his §2255 petition," §2255(f)(4) was unavailable. Id.

In Ryan v. United States, 657 F.3d 604, 607-08 (7th Cir. 2011), the Seventh Circuit considered how soon a prisoner needed to investigate his attorney's failure to file a timely appeal to meet §2255(f)(4)'s due diligence requirement. The court explained that "[n]o rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps" and

"hesitate[d] to pick a magic number." Id. at 607. The court opined that at some point, however, "the reasonably diligent prisoner will contact counsel, ask how the appeal is going, and either receive an honest response or infer from counsel's silence that something is amiss (and then follow up with the court)." Id. at 608.

The respondent has not identified a point at which it believes the petitioner should have realized that he had an opportunity to challenge his sentence or what he could have done to uncover the alleged error in his criminal history calculation. But other district courts have rejected petitioner's arguments that §2255(f)(4) should toll the one-year limitation period where the petitioner had discussed the Guidelines with his attorney and stated at the time of the sentencing hearing that he understood them. In Green v. United States, 415 F. Supp. 3d 338 (W.D.N.Y. 2019), the petitioner brought a claim for ineffective assistance of counsel based on an allegedly incorrect calculation of his criminal history points under the Sentencing Guidelines. Id. at 339. The petitioner argued that two of his convictions did not score under U.S.S.G. §4A1.2(c)(1) because they involved driving violations and lying to the police. Id. at 341-42. Attempting to rely on §2255(f)(4), the petitioner argued that he could not have discovered the errors in his sentencing calculation until he matriculated into federal custody and met a fellow incarcerated person who informed him of the error. Id. at 341. The court rejected that argument, explaining that "[t]he criminal history calculation was consistent with Petitioner's plea agreement, which Petitioner stated that he had read 'multiple

21

times' at the time of the plea hearing, and the plea agreement's calculations were consistent with the Presentence Investigation Report, which Petitioner stated that he had reviewed at the time of sentencing." Id. at 342. See also Graham v. United States, No. 16-cv-851, 2019 WL 2411219 (M.D. Fla. June 7, 2019) (explaining that the court could not infer due diligence under §2255(f)(4) where the petitioner mentioned the provision but did not elaborate as to how he acted with due diligence); United States v. Peoples, No. 14-cv-10911, 2014 WL 3709158, at *3 (E.D. Mich. July 28, 2014) (concluding that §2254(f) is not applicable where petitioner had access to the PSR prior to sentencing and reviewed and discussed the PSR with his attorney before the sentencing).

"Due diligence does not require repeated exercises in futility or exhaustion of every imaginable option, but it does require reasonable efforts." Deroo v. United States, 709 F.3d 1242, 1245 (7th Cir. 2013). The petitioner has failed to demonstrate that after his conviction he made efforts to find out whether his Guidelines were correctly calculated. The petitioner cannot rely on §2255(f)(4) to make his untimely motion timely. Because the petitioner filed his motion after the statute of limitations provided under §2255(f)(1) and because §2255(f)(4) does not apply to the petitioner's motion, the court must dismiss the motion as untimely.

C.    Guidelines Error

Because the petitioner did not timely file his petition, the court does not have the authority to rule on the merits of his ineffective assistance of counsel

claim. For what it is worth, however, if the court *had* been able to reach the merits of the claim, it could not have found in the petitioner's favor.

Judge Randa sentenced the petitioner on February 24, 2009, four years after the United States Supreme Court held in <u>United States v. Booker</u>, 543 U.S. 220 (2005) that the U.S. Sentencing Guidelines were not mandatory. That means that, while Judge Randa was required to *calculate* the offense level, criminal history and advisory Guideline range, he was *not* required to give the petitioner a sentence within that range. By the time Judge Randa sentenced the petitioner, "[n]ot only [did] the guidelines no longer bind the sentencing judge; the judge [could] not even *presume* that a sentence within the applicable guidelines range would be proper." <u>Hawkins v. United States</u>, 706 F.3d 820, 822 (7th Cir. 2013). Judge Randa imposed a sentence of thirteen years (156 months) on each of the robbery counts and seven years (eighty-four months) on the §924(c) count. The statutory maximum penalty for the robbery charges was twenty-five years each; the statutory maximum for the §924(c) charge was life in prison. <u>United States v. Hayes</u>, Case No. 08-cr-134, Dkt. No. 38 at ¶8. Judge Randa sentenced the defendant well below the statutory maximum penalties.

The Seventh Circuit has long held that Guidelines errors are not the kinds of "miscarriages of justice" that warrant §2255 relief if they do not result in illegal sentences—sentences that exceed the stator maximum. <u>See, *e.g.*</u>, <u>Hawkins v. United States ("Hawkins II")</u>, 724 F.3d 915, 916-17 (7th Cir. 2013) (a claim that the sentencing judge miscalculated the advisory guideline range and might have given a lower sentence if he hadn't is not a claim of

23

constitutional error justifying collateral relief); <u>Hawkins</u>, 706 F.3d at 823; <u>Scott</u> <u>v. United States</u>, 997 F.2d 340, 342 (7th Cir. 1993). This is particularly true in cases where the sentencing took place after <u>Booker</u> and the Guidelines were advisory. The petitioner reasons that if his sentencing lawyer had caught the error in calculating the criminal history category and pointed it out to Judge Randa, Judge Randa would have agreed and would have imposed a lower sentence. That kind of "could have, might have" argument does not rise to the level of a violation of the Constitution or of federal law, or prove that the petitioner received a sentence in excess of the statutory maximum—the bases for relief under §2255(a).

Nor is it clear that a lawyer's failure to recognize a Guidelines calculation error constitutes ineffective assistance of counsel in violation of the Sixth Amendment. To succeed on an ineffective assistance of counsel claim, a petitioner must show "both that his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that [the petitioner] was prejudiced by the subpar representation." <u>United States v. Jones</u>, 635 F.3d 909, 915 (7th Cir. 2011) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687-96 (1984)). To establish prejudice, a petitioner "must show that there is a reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different, such that the proceedings were fundamentally unfair or unreliable." <u>Id.</u> To prove his ineffective assistance claim, the petitioner would have had to demonstrate more than that Attorney Stiller did not catch the error

in the calculation of the criminal history category. He would have had to show that Stiller's failure to identify the error was "unreasonable," and even then, he would have had to show a probability that but for that error, he would have received a different sentence.

Finally, the Supreme Court's decision in <u>Dean</u>—which the petitioner cited in his reply brief, dkt. no. 9 at 11—has no bearing on the question of whether Attorney Stiller provided ineffective assistance of counsel in failing to catch the criminal history calculation error. As the respondent points out, the <u>Dean</u> case was decided years after Judge Randa sentenced the petitioner and the Seventh Circuit has held that it does not apply retroactively to cases decided before the Supreme Court decided it. <u>Worman v. Entzel</u>, 953 F.3d 1004, 1008 (7th Cir. 2020). Perhaps more to the point, <u>Dean</u> held nothing more than that a sentencing judge is allowed to take into account the mandatory minimum sentence when calculating what total, overall sentence will be sufficient but not greater than necessary to accomplish the goals of sentencing. The petitioner has not argued that Judge Randa somehow believed he could not take into account the seven-year mandatory minimum sentence for the §924(c) charge when fashioning the overall sentence, and even if he had, there was a Seventh Circuit case in effect at the time that held district court judges should impose the sentences for counts that did not have mandatory minimums without regard for the sentence required for those counts that carried mandatory minimums. <u>United States v. Roberson</u>, 474 F.3d 432, 434-45 (7th Cir. 2007). Although that no longer is a correct statement of the law, it

25

*was* the governing law at the time Judge Randa imposed sentence on the petitioner.

Even if the petition was not time-barred, therefore, the petitioner would not have succeeded on the merits.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 673, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to *habeas* relief under 28 U.S.C. §2255.

## IV.    Conclusion

The court orders that the petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 1.

The court orders that the case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 27th day of June, 2023.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**